UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

DAVID CHURCH,

                  Petitioner,

        vs.

MICHAEL CORCORAN,[1] Superintendent,
Cayuga Correctional Facility,

                Respondent.

No. 9:07-cv-01118-JKS

MEMORANDUM DECISION

Petitioner David Church, a state prisoner proceeding *pro se*, filed an amended petition for habeas corpus relief under 28 U.S.C. § 2254.[2]  Church is currently in the custody of the New York Department of Correctional Services, incarcerated at the Cayuga Correctional Center. Respondent has answered, and Church has filed a reply.

## I.  BACKGROUND/PRIOR PROCEEDINGS

Following a guilty plea in the Tompkins County Court, Church was convicted of 10 counts of Unlawful Surveillance in the Second Degree (N.Y. Penal Law § 24045[1]).  After grouping the counts into four groups, the Tompkins County Court sentenced Church to an indeterminate prison term of one and one-third years to four years on each count in the group, to be served concurrently, with the sentences in each group to run consecutive to the sentences in

---

[1] Michael Corcoran, Superintendent, Cayuga Correctional Facility, is substituted for Kenneth Perlman, Mid-State Correctional Facility.  Fed. R. Civ. P. 25(d).

[2] The original petition was filed by counsel.  Counsel withdrew with leave of court, and Church, appearing *pro se*, filed his amended petition.

each of the other groups, resulting in an aggregate prison term of five and one-third years to sixteen years in prison.  Church timely appealed his conviction and sentence to the Appellate Division, Third Department, which affirmed his conviction and sentence in a reasoned decision. The New York Court of Appeals denied leave to appeal on October 24, 2006.[3]  On November 29, 2006, Church, appearing *pro se*, filed a motion to vacate the judgment of conviction under N.Y. Criminal Procedure Law § 440.10.  The Tompkins County Court denied the motion in a reasoned decision, and the Appellate Division, Third Department, summarily denied leave to appeal without opinion or citation to authority on May 1, 2007.  Church then filed a petition for an error *coram nobis* in the Appellate Division, Third Department, on May 13, 2007, which summarily denied his petition on June 19, 2008.  The New York Court of Appeals denied leave to appeal on September 17, 2008.[4]  Church timely filed his petition in this Court on October 23, 2007. Church filed his amended petition on June 5, 2008.

## II.  GROUNDS PRESENTED/DEFENSES

In his original petition, Church raised five grounds for relief:  (1) unlawful search and seizure (lack of probable cause); (2) guilty plea was induced in violation of Fifth Amendment right against self-incrimination (not made knowingly, intelligently, and voluntarily); (3) the imposition of consecutive sentences violated the Double Jeopardy Clause of the Fifth Amendment; (4) his sentence was unduly harsh and excessive (Eighth Amendment); and (5) ineffective assistance of trial counsel.  In his amended petition, Church raises five grounds:  (1)

---

[3] *People v. Church*, 819 N.Y.S.2d 155 (App. Div.), *lv. denied*, 857 N.E.2d 1142 (N.Y. 2006) (Table).

[4] *People v. Church*, 896 N.E.2d 99 (N.Y. 2008) (Table).

his guilty plea was not knowingly, intelligently, and voluntarily given; (2) he received ineffective assistance of trial and appellate counsel; (3) he was denied a full and fair hearing in the Tompkins County Court on his challenge to the search warrant; (4) the search warrant was invalid; and (5) the imposition of consecutive sentences violated his right to be free of double jeopardy under the Fifth Amendment.  Respondent contends that:  (1) Church's first ground, the plea was involuntary, is procedurally barred; and (2) Church's claim of ineffective appellate counsel is barred by the applicable statute of limitations and is unexhausted.  Respondent raises no other affirmative defense.[5]

### III.  STANDARD OF REVIEW

Because the petition was filed after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Consequently, this Court cannot grant relief unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[7]  The holding must also be binding upon the states; that is, the decision must be based upon constitutional grounds, not on

---

[5] *See* Rules—Section 2254 Cases, Rule 5(b).

[6] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[7] *Williams*, 529 U.S. at 412.

the supervisory power of the Supreme Court over federal courts.[8]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[9]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[10]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[11]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[12]  Petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[13]

---

[8] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[9] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam).

[10] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[11] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[12] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[13] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

In applying this standard, this Court reviews the last reasoned decision by the state court.[14]  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[15]

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[16]  A federal court must accept that state courts correctly applied state laws.[17]  A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[18]  A federal court may not issue a habeas writ based upon a perceived error of state law unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[19]

---

[14] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[15] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[16] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[17] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[18] *See Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002).

[19] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

## IV.  DISCUSSION

Ground 1:  Guilty Plea Involuntary and

Ground 2:  Ineffective Assistance of Counsel.

Because the outcome of the first ground is dependent upon the second ground, it is appropriate to combine the discussion of the two grounds.  In his first ground, Church contends that because he was not clearly informed of the consequences of his plea, specifically that consecutive sentences could be imposed, his plea was not knowingly, voluntarily, and intelligently entered.  In his second ground, Church essentially argues that the failure to adequately inform him that consecutive sentences could be imposed, coupled with what Church contends were false representations, rendered counsel's representation ineffective.  Church raised these grounds in his § 440.10 motion.  The Tompkins County Court, in denying Church's motion, held:

> All of Defendant's contentions are ones which were either raised on appeal, or could have been raised on appeal.  The closest Defendant comes to raising a new issue is by reciting his understanding of conversations with his attorney and characterizing those recollections as demonstrating the attorney's ineffectiveness.  For example, he claims his attorney told him that there was a plea agreement under which he would be sentenced concurrently for all of the offenses. He presents no affidavits or other information beyond his self-serving statement. His statement is contrary to his statements made on the record and contrary to the clear record of the plea proceeding.  The allegations made by Defendant do not raise an issue concerning ineffective assistance of counsel: *People v. Anonymous* 262 AD2d 717; *People v. Santiago* 227 AD2d 657.
>
> The Court has considered all of Defendant's various allegations and finds them to be without merit.  The motion is denied, CPL 440.10(2).[20]

---

[20] Docket No. 18-12, p. 3.

Respondent contends Church's first ground is procedurally barred.  This Court agrees. Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."[21]  This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims . . . ."[22]  Under Second Circuit law, to constitute an adequate and independent state law ground it must be consistently applied,[23] and expressly relied upon.[24]  N.Y. Criminal Procedure Law § 440.10(2) is an adequate and independent state ground consistently applied.[25]

Even if the court were to reach the merits, Church would not prevail.  Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues *de novo* on the record before it.[26]  In so doing, because it is not clear that it did not so do, this Court assumes that the state court decided the claim on the merits and the decision rested on

---

[21] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[22] *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).

[23] *Richardson v. Greene*, 497 F.3d 212, 217–18 (2d Cir. 2007).

[24] *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005).

[25] *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003).

[26] *See Dolphy v. Mantello*, 552 F.3d 236, 239–40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); cf. Wiggins, 539 U.S. at 530–31 (applying a *de novo* standard to a federal claim not reached by the state court).

federal grounds.[27]  This Court also gives the assumed decision of the state court the same

AEDPA deference that it would give a reasoned decision of the state court.[28]

Church faces a high hurdle in seeking to overturn a guilty plea on collateral review.  As

the Supreme Court held in *Mabry*:[29]

> It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.  It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.  It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired.  *In Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), we stated the applicable standard:

> > [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).[30]

Twenty years later the Supreme Court explained in *Iowa v. Tovar*:[31]

> This Court recently explained, in reversing a lower court determination that a guilty plea was not voluntary:  "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances-- even though the defendant may not know the *specific detailed* consequences of

---

[27] *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman*, 501 U.S. at 740; *see Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *see also Fama v. Comm'r of Correctional Svcs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same).

[28] *Jimenez*, 458 F.3d at 145–46.

[29] *Mabry v. Johnson*, 467 U.S. 504 (1984), *disapproved on other grounds in Puckett v. United States*, 556 U.S. ___, 129 S. Ct. 1423, 1430 n. 1 (2009).

[30] *Id.* at 508–09 (internal quotation marks and citations omitted).

[31] *Iowa v. Tovar*, 541 U.S. 77 (2004).

invoking it." *United States v. Ruiz*, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (emphasis in original).  We similarly observed in *Patterson:* "If [the defendant] . . . lacked a full and complete appreciation of all of the consequences flowing from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum." 487 U.S., at 294, 108 S.Ct. 2389 (internal quotation marks omitted).[32]

Although the alleged ineffective assistance of counsel occurred prior to the entry of Church's guilty plea, review of this claim is not foreclosed.  The Supreme Court has directly addressed this subject, stating:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.[33]

In *Hill*,[34] the Supreme Court held:  "[w]here, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"[35]

This Court must, therefore, analyze Church's claims in that light, *i.e.*, the effect of counsel's performance on the voluntariness of the guilty plea.  First, it must be noted that this matter did not go to trial, rather Church entered a guilty plea.  Accordingly, the only issue

---

[32] *Id.* at 92.

[33] *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

[34] *Hill v. Lockhart*, 474 U.S. 52 (1985).

[35] *Id.* at 46-57 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

properly before this Court is whether counsel was so ineffective in advising Church to plead guilty that it rendered his plea unknowing, unintelligent and involuntary.

Under *Strickland*,[36] to demonstrate ineffective assistance of counsel, Church must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[37]  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[38]  In *Hill*, the Supreme Court explained that a habeas petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[39]  *Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions.[40]  Indeed, the Supreme Court admonished in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

---

[36] *Strickland v. Washington*, 466 U.S. 668 (1984).

[37] *Id.* at 687.

[38] *Id*.

[39] *Hill,* 474 U.S. at 57.

[40] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.[41]

In his amended petition before this Court, Church alleges that he was misinformed by counsel that, in exchange for his guilty plea, the prosecutor had offered a sentence of conditional discharge and that Church would receive a sentence of from three to six, at most eight, months in the county jail. Counsel advised him that his sentence would be up to the judge and that the judge was "funny" about cases involving sexual matters. According to Church, counsel advised him to be careful what he said, not to implicate anyone else in the crime, to listen to the judge carefully and, if the judge made any mention of consecutive sentences, not to enter a plea of guilty.

The record is clear that there was no plea agreement.[42] The following colloquy occurred between the Court and Church:

> THE COURT: I have to be sure you understand the nature and consequences of a plea of guilty Mr. Church, so I do have to ask you some questions about that. If there's something I ask you you do not understand, you have to let me know that, and you can either ask me directly or you can ask your Attorney and between us we'll try to clarify it for you. Okay?
>
> DAVID CHURCH: Yes, sir.
>
> THE COURT: All right. First of all, it's proposed you would be pleading guilty to the Indictment. This is a ten Count Indictment, each a Count of Unlawful Surveillance in the Second Degree in violation of Penal Law 256.45, Subdivision 12. That would be a Class E Felony, carrying a maximum period of imprisonment of one and a third to four years on an indeterminate term. That is the maximum sentence the law allows for each of these Counts.

---

[41] *Strickland*, 466 U.S. at 689 (internal citations and quotation marks omitted).

[42] Docket No. 18-20, p. 121.

There has been no promise of sentence on any of these Counts; so the sentence would generally range from all the way from Conditional Discharge on the low end to that maximum of one and a third to four years on the maximum. Do you understand that, Mr. Church?

DAVID CHURCH:  Yes, I do, your Honor.

THE COURT:  All right. And no promises have been made to you. relative to what sentence you would receive upon a plea of guilty; is that correct?

DAVID CHURCH:  That is correct.

THE COURT:  All right.  And you feel you've had sufficient time to talk about the nature and the consequences of a plea of guilty with your Attorney, Mr. Kerrigan?

DAVID CHURCH:  Yes, I have.

THE COURT:  And you've talked to him about what might happen if you went to trial on this matter and what defenses you might raise to the charges the People have filed in this case?

DAVID CHURCH:  Yes, I have.

THE COURT:  And were there any questions about the nature of the trial or what defenses you might raise that Mr. Kerrigan was unable to answer for you and you need further clarification?

DAVID CHURCH:  No, I don't believe so.

[Explanation of rights surrendered omitted]

THE COURT:  All right.  All right then. Any questions you have at this point, Mr. Church, something you don't understand before we proceed here?

DAVID CHURCH:  No.

THE COURT:  And I do have to ask whether or not anyone is forcing you in any way to plead guilty, your Attorney or anyone else involved in this case, anyone forcing you to plead guilty, Mr. Church, against your will?

DAVID CHURCH:  No.[43]

The statements made by Church at the plea colloquy directly contradict his current contentions regarding the voluntariness of his plea.

> For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.[44]

The allegations in the petition are somewhat internally inconsistent and contradictory.  On the one hand Church claims that there was a plea agreement with the prosecutor, yet in almost the next breath he acknowledges that he was told that what sentence he would get was up to the judge.  Church also acknowledges that mention was made by counsel about consecutive sentences.  In his state court § 440.10 motion, Church alleged he had earlier been offered a plea bargain for a "term of 1 to 3 years incarceration, with all 10 counts running concurrent."[45]  This too is inconsistent with his allegation that he was unaware of the fact that he could receive consecutive sentences.  Church's factual admissions at the plea colloquy clearly establish his guilt.  There is nothing in the record before this Court that indicates Church had any reasonably viable defense to the charges.

---

[43] Docket No. 18-20, pp. 122-25,

[44] *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

[45] Docket No. 18-10, p. 9.  Apparently, as indicated in both his petition before this Court and in his state court § 440.10 motion, that plea bargain was subsequently rejected.

Even if Church was not advised that he could be sentenced to consecutive sentences, it would not render his plea involuntary.[46]  Finally, Church's allegations concerning what sentence he would receive, when taken in context, are more in the form of a prediction than what was agreed.  A defendant is not entitled to withdraw a guilty plea simply because of counsel's mistaken prediction of the sentence to be received.[47]

With respect to the claim of ineffective appellate counsel, while this Court may agree with Respondent that this claim is both unexhausted and untimely, it need not deny the petition on either of those grounds.  The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[48]  "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."[49]  In this case there is no reasonable probability that, had appellate counsel raised the issues respecting the entry of the plea and the ineffectiveness of counsel, that the appellate court would have reversed and remanded with instructions to allow Church to withdraw his guilty plea.

---

[46] *See Wilson v. McGinnis*, 413 F.3d 196, 200 (2d Cir. 2005) (holding that the failure of the state court to advise a defendant that his sentences could run consecutively did not unreasonably apply the Supreme Court's general principle that a plea must be knowing, intelligent, and voluntary to be valid).

[47] *United States v. Sweeny*, 878 F.2d 68, 70 (2d Cir. 1989) (per curiam).

[48] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective counsel to fail to raise meritless claims).

[49] *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).

Consequently, this Court cannot say on the record before it that the assumed decision of the Appellate Division "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[50]  Church is not entitled to relief under either his first or second ground.

Ground 3:  Denial of Fair Suppression Hearing.

In his third ground, Church contends that despite the fact there was evidence that materially false information had been provided to the court, which established there were essential facts in dispute, the court refused to allow Church to present his case.  Church argues that this constitutes the denial of a full and fair suppression hearing.  Although Church raised his third ground in his direct appeal, the Appellate Division did not directly address the issue, including it in its catch-all statement "Defendant's remaining contentions have been considered and found unpersuasive."[51]  Where, as here, there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues *de novo* on the record before it, assume that the state court decided the claim on the merits giving the assumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[52]

---

[50] 28 U.S.C. § 2254(d).

[51] *Church*, 819 N.Y.S.2d at 158.

[52] *See* discussion, *ante*, p. 7.

In denying Church's motion to suppress the evidence seized as a result of executing the

search warrant the Tompkins County Court held:

> Defendant seeks suppression of physical evidence seized from him by law enforcement officers, pursuant to a duly executed search warrant issued by an Ithaca Court Judge.
>
> The affidavit underlying Defendant's suppression motion raises no factual issue sufficient to challenge the legality of the police search pursuant to the warrant.  The Court has reviewed a copy of the search warrant, the underlying affidavit seeking such warrant, and, the return filed indicating the property seized as a result of such warrant.
>
> When the challenge to the search warrant merely concerns the sufficiency of the application, no evidentiary hearing is necessary.  People v. Solimine, 18 NY2d 477 (1966); People v. Slaughter 37 NY2d 596 (1975); People v. Glen, 30 NY2d 252 (1972).  Nothing in the moving affidavit indicates any reason to doubt the credibility of the affiant.  The information contained in the underlying affidavit sets forth sufficient probable cause to justify the warrant, and the warrant was not over broad in its authorization to seize relevant property.  Defendant raises no other factual issues sufficient to require a hearing.  People v. Mendoza, 82 NY2d 415 (1993).   Accordingly, the motion to suppress physical evidence is summarily denied.[53]

The affidavit supporting Church's omnibus motion challenging the search warrant stated:

> 9.     Upon information and belief, by the time the prosecution presented its application for the search warrant for the College Avenue apartment of the defendant they had recovered and executed pursuant to an earlier search warrant a video camera located in University Avenue.  It appears that the application for a search warrant did not set forth the then known facts that the camera recovered at University Avenue was not plugged in or connected to any power source or any transmitting source.
>
> 10.     It is respectfully submitted that the failure to present such known facts to the issuing magistrate constituted a material misrepresentation by omission of the facts and circumstances known to the applicant for a search warrant.[54]

---

[53] Docket No. 18-4, p. 3.

[54] Docket No. 18-2, pp. 5–6.

No other allegations were made with respect to the truth or veracity of the affidavits underlying the application for the search warrant.  How this allegedly omitted "facts" concerning the camera seized at University Avenue are either in dispute or material to the issuance of the search warrant is unexplained.  Church does not identify what other evidence exists that could have been introduced on any material fact.  The record also shows that Michael Gray, the investigator who executed the affidavit in support of the application for a search warrant, was extensively cross-examined by counsel for Church at the suppression hearing.[55]

An evidentiary hearing is required only if the defendant makes a sufficient offer of proof with respect to his allegation that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by affiant in a search warrant affidavit, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains insufficient content in the warrant affidavit to support a finding of probable cause.[56]  As discussed further below in connection with Church's fourth ground, the Appellate Division found sufficient probable cause to search Church's residence without resort to the fact that at the time it was observed the camera at University Avenue may or may not have been connected, or if that information were known to the investigator.

This Court cannot say on the record before it that the assumed decision of the Appellate Division  "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the

---

[55] Docket 18-20, pp. 20–34.

[56] *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978).

evidence presented in the State court proceeding."[57]  Church is not entitled to relief under his third ground.

Ground 4:  Invalidity of Search Warrant.

In his fourth ground, Church argues that the search warrant was improperly issued because the application (1) failed to identify the crime for which the evidence was sought; (2) failed to set forth probable cause; (3) was based upon false and stale information; and (4) failed to describe the property to be seized with sufficient particularity.  The Appellate Division rejected Church's arguments, holding:

> On this appeal, defendant first takes issue with the search warrant permitting the search of his home, primarily contending that the application upon which it was based failed to set forth sufficient timely facts to establish probable cause and that the warrant itself did not describe the property to be seized with sufficient particularity.  As to the warrant application, we note that such a request need only be supported by "sufficient information 'to support a reasonable belief that evidence of a crime may be found in a certain place'" (citations omitted), and we afford considerable deference to the suppression court's determination that probable cause was established (citations omitted).

> Here, our review of the facts presented to City Court leads us to conclude that there existed probable cause to believe that evidence of criminality would be found in defendant's home. Gray's affidavit demonstrated the existence of a camera lens strategically positioned in a bathroom used by defendant's tenants, and his visual inspection of adjoining areas revealed the presence of cables he believed to be capable of transmitting video images.  Statements by defendant's tenants indicated that defendant had recently accessed these areas and the tenants further stated that they had not authorized the placement of the camera.  When viewed in conjunction with the details of defendant's criminal history, these facts adequately established probable cause justifying the search of defendant's residence (citations omitted).

> Nor are we persuaded that stale information in the warrant application rendered the warrant defective.  Although the application referred to defendant's 1996 aggravated harassment conviction and materials seized as part of that

---

[57] 28 U.S.C. § 2254(d).

18

investigation, we have long held that "[p]robable cause is not determined simply by counting the number of days between the occurrence of the events relied upon and the warrant's issuance" (citations omitted).  In any event, the warrant herein was primarily justified by the existence of more recent facts (i.e., the presence of an unauthorized camera and related equipment in the apartment of one of defendant's tenants), and defendant's prior conviction merely lended support to the finding of probable cause (citation omitted ).  Finally, given that the warrant specifically authorized the seizure of electronic recording and storage equipment, we agree with County Court that the warrant itself was also sufficiently particular "'to enable the searcher to identify the . . . places or things that [City Court] determined should be searched or seized'" (citations omitted).[58]

Under New York law, a guilty plea does not foreclose a post-conviction challenge to the issuance of a search warrant;[59] consequently, contrary to federal law, a challenge to the issuance of a search warrant is cognizable upon appeal.[60]  Church's fourth ground is, however, foreclosed by the Supreme Court decision in *Stone*.[61]  Under the holding in *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial.[62]  The Second Circuit has made it clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim.[63]  In order to receive habeas review of his Fourth Amendment claim, a petitioner must demonstrate either that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place, but that the petitioner was

---

[58] *Church*, 819 N.Y.S.2d at 157–58.

[59] N.Y. Crim. Proc. Law § 470.70[2].

[60] *Lefkowitz v. Newsome*, 420 U.S. 283, 291–93 (1975).

[61] *Stone v. Powell*, 428 U.S. 465 (1976).

[62] *Id.* at 482.

[63] *See McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983).

unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process."[64]  A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," is insufficient to give this Court authority to review Fourth Amendment claims.[65]  That New York has in place such procedures is well settled,[66] and Church has not asserted the existence of an unconscionable breakdown of that process in this case.  Church is not entitled to relief under his fourth ground.

Ground 5:  Double Jeopardy.

Church contends that, because he condensed the various depictions of the tenants into a single videotape, he committed a single criminal transaction.  Thus, according to Church, the imposition of consecutive sentences violated the Double Jeopardy Clause of the Fifth Amendment.  The Appellant Division rejected Church's "single crime" argument, holding:

> Defendant's claim that County Court improperly imposed consecutive sentences is also unpersuasive.  The fact that defendant condensed the various depictions of his tenants onto a single videotape cannot change the fact that he committed multiple crimes involving many victims at various locations.[67]

The Double Jeopardy Clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."  In essence, the Double Jeopardy Clause protects a criminal defendant against three things:  (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense

---

[64] *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).

[65] *Id*. at 72.

[66] *See id*.

[67] *Church*, 819 N.Y.S.2d at 158 (footnote and citations omitted).

after conviction," and (3) "multiple punishments for the same offense."[68]  Church's argument

rests on the third basis–he received multiple punishments for the same offense.  This Court is

bound by the determination of the Appellate Division that, under New York law, multiple crimes

were committed.[69]  Thus, because Church committed more than one offense under state law,

there was no double jeopardy violation.  Church is not entitled not relief under his fifth ground.

## V.  CONCLUSION AND ORDER

Church is not entitled to relief on any ground raised in his petition.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[70]  To the extent the issues raised in the petition were addressed by the Appellate

Division, Fourth Department, no reasonable jurist could find that the decision was "objectively

unreasonable."  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.  *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

The Clerk of the Court is to enter final judgment accordingly.

Dated:  January 29, 2010.

/s/ James K. Singleton, Jr.

JAMES K. SINGLETON, JR.
United States District Judge

---

[68] *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 803 (1989).

[69] *See Bell*; *see Estelle*; *see Walton*.

[70] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).